IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DEWIGHT McBRIDE | § | |
| v. | § | CIVIL ACTION NO. 6:04cv361 |
| HEATH & HEATH HARDWARE | § | |

MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Plaintiff filed the above-styled lawsuit on August 4, 2004.  The case was transferred to the undersigned with the consent of the parties in accordance with 28 U.S.C. § 636.  On May 2, 2005, Defendant filed a Motion for Summary Judgment (docket #23).  To date, Plaintiff has not filed a response.  On June 15, 2005, Defendant filed a Motion for Entry of Order Granting Defendant's Motion for Summary Judgment (docket #28). For the reasons assigned below, the Court finds that the Defendant's Motion for Summary Judgment should be granted.

*Background*

In the original complaint,[1] Plaintiff states that he started working for Defendant in October 2001 as a certified fork truck operator and as a laborer.  Plaintiff, an African American, alleges that

---

[1] Plaintiff filed a Motion for Leave to File Amended Complaint on September 14, 2004.  An Order issued on April 29, 2005, granted Plaintiff's Motion for Leave to File Amended Complaint and directed Plaintiff to electronically file the amended complaint upon receipt of the Order.  To date, Plaintiff has not filed his amended complaint.

he was subjected to race discrimination and harassment from co-workers from December 2001 until September 20, 2002. For example, he alleges that racial slurs were directed at him and that offensive graffiti was allowed to remain in the workplace. He asserts that he complained to superiors, but no action was taken. Plaintiff submits that he was subjected to a hostile work environment and that he was denied a promotion and raise because of his race. Plaintiff states that he was fired from his job in April 2003, for allegedly loading goods for a customer without first obtaining a sales ticket and permission to load the order. He complains that he was accused of stealing barbed wire. Plaintiff filed a charge of discrimination with the EEOC and received a right to sue letter.

The Defendant filed a motion for summary judgment on May 2, 2005. Defendant's motion identifies three claims of racial harassment asserted by Plaintiff in his deposition: (1) that he was called "nigger" by a customer and by co-workers; (2) that "nigger" was once written on a wheelbarrow and at another time written on a piece of paper that Plaintiff found on his forklift; and (3) that there was graffiti in the restroom that included the works "nigger" and "KKK," together with drawings of a male having sex with an animal. Defendants asserts that every incident reported by Plaintiff was investigated and remedial action was taken when necessary. According to Defendant, Plaintiff was fired after it was discovered that he was stealing supplies.

When this lawsuit was filed, Plaintiff was represented by attorney Sten Langsjoen. On April 13, 2005, Mr. Langsjoen filed a Motion to Withdraw as Plaintiff's counsel. Mr. Langsjoen explained that Plaintiff instructed him that he wished to end their attorney-client relationship and stated that he either had or intended to hire new counsel. Following a status conference, the Court granted the Motion to Withdraw on May 5, 2005, and extended Plaintiff's deadline to respond to the Motion for Summary Judgment to June 13, 2005. The Order was sent to Plaintiff at his last known address.

Plaintiff failed to file a response to the Motion for Summary Judgment. He has not filed any other pleadings or otherwise contacted the Court. Apparently, Plaintiff has not obtained a new attorney to represent him in this matter because a notice of appearance has not been filed.

*Summary Judgment Standard*

Rule 56(c) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact

questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

In this case, Plaintiff did not file a response to the motion for summary judgment. Pursuant to Local Rule, CV-7(d), the Court assumes that Plaintiff has no opposition to the motion. Further, in accordance with Local Rule, CV-56(c), "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by proper summary judgment evidence."

*Discussion and Analysis*

Race Discrimination

In this case, Plaintiff alleges that he was discriminated against because of his race. Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. S 2000e-2(a)(1). There are essentially two theories of liability for discrimination under Title VII: disparate impact and disparate treatment. In the present case, the Plaintiff alleges disparate treatment.

The initial burden is on Plaintiff to show facts sufficient to warrant recovery. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 (5th Cir.1993). To succeed, a plaintiff proceeding on a disparate treatment theory of employment discrimination must show both disparate treatment and discriminatory motive. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir.1988); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 962 (5th Cir.1981). A plaintiff must show that the protected trait – in this case, Plaintiff's race – actually motivated the employer's decisions. The protected trait must have actually played a role in the decision making process and must have had a determinative influence on the outcome. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701 (1993).

Discriminatory motive or intent may be shown by direct or circumstantial evidence. *Wheeler v. City of Columbus, Miss.*, 686 F.2d 1144, 1150 (5th Cir.1982). An example of direct evidence of discrimination would be any statement or written document showing a discriminatory motive on its face. See *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990). Direct evidence of discrimination is rare. As a result, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in

*McDonnell-Douglas*. *Portis v. First Nat. Bank of New Albany, MS*, 34 F.3d 325, 328 (5th Cir.1994). The *McDonnell-Douglas* framework establishes a prima facie case by inference. *Id*.

To defeat a motion for summary judgment, a Title VII plaintiff has the burden of making a prima facie showing that:

1) he belongs to a protected class;
2) he was qualified to do his job;
3) despite his qualifications, his employment situation was adversely affected; and
4) others outside that protected class were treated differently or, in the case of termination, that the position was filled by someone outside of that protected class.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981)*; Davis v. Chevron U.S.A., Inc*., 14 F.3d 1082, 1087 (5th Cir.1994) (applying *McDonnell Douglas* test); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (same). The ultimate burden of persuading the court that he was a victim of intentional discrimination, however, always remains on Plaintiff. *Id.*

If a plaintiff succeeds in showing facts sufficient to warrant recovery, a rebuttable presumption, or inference, arises. *Armstrong*, 997 F.2d at 65. The burden is then on the employer to come forward and show legitimate, nondiscriminatory reasons for the challenged acts. *Id.* If the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove that the reasons put forth by the employer are a mere pretext – or phony reason – for accomplishing the discriminatory act. *Id.*; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. At 1093.

In this case, Plaintiff has not established a prima facie case of discrimination. Specifically, Plaintiff has not come forward with evidence showing that he was replaced by someone who was not an African-American. Indeed, Plaintiff does not even allege in his complaint that he was

replaced by someone outside of the protected class. Likewise, in regard to Plaintiff's allegation that he was denied a promotion and raise because of his race, Plaintiff has not alleged or shown that others outside of the protected class were treated differently. Further, Plaintiff has not shown that his employment was adversely affected in that he does not identify the promotion that he sought and was denied.

Plaintiff has not met his burden of making a prima facie showing of race discrimination. There are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law on Plaintiff's claims of discriminatory termination and failure to promote.

Hostile Work Environment

The Plaintiff also complains in this lawsuit that he was subjected to a hostile work environment. To establish a Title VII hostile work environment claim, a plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir.2001)). The court must look to all of the circumstances in determining whether a plaintiff's work environment was hostile or abusive – including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367 (1993)).

Conduct that only amounts to ordinary socializing in the work place such as occasional horseplay, sporadic or occasional use of abusive language, and occasional teasing, does not constitute an abusive or hostile environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283 (1998). A mere offensive utterance, discourtesy or rudeness will not constitute a hostile work environment. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Only extreme conduct amounting to a material change in the terms and conditions of employment is actionable. *Ramsey*, 286 F.3d at 268. In other words, the offensive conduct must be so severe and pervasive that it creates a racially abusive overall working environment. *Id.* To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.1999).

In this case, Plaintiff alleged in the complaint that unspecified employees directed racial slurs at him. At his deposition, however, Plaintiff testified that he never heard any employee direct a racial slur at him. Rather, he alleged that his co-workers used racial slurs when talking about him behind his back. Plaintiff did not report any racial slurs from co-workers to his immediate supervisor, Randy Tennison.

Plaintiff testified at his deposition that the word "nigger" was written on a wheelbarrow, that he found a piece of paper on a forklift with the word "nigger" on it and that graffiti was written on the restroom wall stating the words "nigger" and "KKK." According to an affidavit submitted by Plaintiff's co-worker, Tim Strandberg, the wheelbarrow incident occurred in Fall 2002. Strandberg asserted that he discovered the word "nigger" written in dust on a wheelbarrow and immediately wiped it off. Employees were instructed that such behavior would not be tolerated. The employee

responsible for writing the racial slur on the wheelbarrow was not identified. Some time later, Plaintiff states that he found a piece of paper on a forklift with the word "nigger" written on it. Plaintiff did not report the incident to anyone and he did not keep the piece of paper. There is no dispute that graffiti of a sexual nature was discovered on a restroom wall. According to Plaintiff, the words "nigger" and "KKK" were written on the wall with the drawing. There is no evidence as to who drew the picture or wrote the words alleged by Plaintiff. The restroom is used by both employees and customers. When Plaintiff reported the graffiti, it was immediately investigated by his supervisor, Randy Tennison, and was painted over.

These events do not establish conduct that is objectively offensive to the level required to state a violation of Title VII. Rather, they are proof of a "few isolated incidents of racial enmity." *Padilla v. Carrier Air Conditioning*, 67 F.Supp.2d 650, 659 (E.D.Tex.1999) (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir.1987)). The Court's observations in another case involving a hostile work environment claim are equally applicable in this case, "these actions, while not commendable, are not so numerous and opprobrious as to constitute a hostile work environment." *McCray v. DPC Industries, Inc.*, 942 F.Supp. 288, 290-93 (E.D.Tex.1996). Moreover, Plaintiff has not shown or alleged facts showing that the offensive remarks at issue affected a term, condition or privilege of employment. These sporadic utterances were not sufficiently severe or pervasive as to alter the conditions of his employment. See *Harris*, 510 U.S. at 21, 114 S.Ct. at 367.

Plaintiff additionally alleges that he was called a "nigger" by a customer named Joe Williams. When Plaintiff reported this conduct to Tennison, Tennison asked the customer to stop the behavior. Plaintiff did not report any further incidents. Like the other claims of offensive remarks, Plaintiff

fails to establish a prima facie claim.  Plaintiff has not alleged or shown that a term, condition or privilege of his employment was affected.  Further, the competent summary judgment evidence shows that the Defendant took prompt remedial action when notified of the customer's conduct.

Plaintiff has not established a prima facie hostile work environment claim.  There are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law on Plaintiff's Title VII hostile work environment claim.

In light of the foregoing discussion and analysis, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (docket #23) and Defendant's Motion for Entry of Order Granting Motion for Summary Judgment (docket #28) are **GRANTED**.  The complaint is hereby **DISMISSED** with prejudice.  Any motion not previously ruled on is **DENIED**.  It is finally

**ORDERED** that the Bench Trial scheduled for August 30, 2005, is **CANCELED**.

So **ORDERED** and **SIGNED** this **20** day of **July, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE